UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 26-23987-CIV-MARTINEZ

YAMIR NOVAS ALVAREZ,

      Petitioner,

v.

GARRETT RIPA in his official capacity as Field
Office Director, Miami Field Office, U.S.
Immigration and Customs Enforcement, *et al.*,

      Respondents.

_____/

## ORDER

**THIS CAUSE** is before the Court on Petitioner Yamir Novas Alvarez's Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241 ("Petition"), [ECF No. 1]. In accordance with 28 U.S.C. § 2243, the Court issued an Order directing Respondents to show cause why the Petition should not be granted. (*See* [ECF No. 3]). Respondents filed their Response on June 11, 2026 ("Response") [ECF No. 4], and Petitioner replied on June 13, 2026 ("Reply") [ECF No. 5]. The Court has considered the briefing, oral argument, and the relevant law and is otherwise fully advised. For the reasons set forth herein, the Petition is **DENIED**.

## I.    BACKGROUND

Petitioner Yamir Novas Alvarez is a native and citizen of Cuba who was paroled into the United States at or near Brownsville, Texas on September 29, 2005. (Pet. ¶ 20; R. of Deportable/Inadmissible Alien [ECF No. 4-1] 2). Petitioner has resided in the United States ever since. (Pet. ¶ 21). In February 2008, Petitioner's status was adjusted to that of Lawful Permanent Resident of the United States. (R. of Deportable/Inadmissible Alien 2).

On July 26, 2010, Petitioner was convicted in the United States District Court for the Southern District of Florida for Conspiracy to Possess with Intent to Distribute Five Kilograms or More of Cocaine in violation of 21 U.S.C. § 846 and Possession with Intent to Distribute a Detectable Amount of Marijuana in violation of 21 U.S.C. § 841(a)(1). (Pet. ¶ 22; Judgment [ECF No. 4-3]). Petitioner was ordered removed to Cuba on January 9, 2014 (Order of Removal [ECF No. 1-8]), and was placed on an Order of Supervision ("OSUP") on February 6, 2014 (Order of Supervision [ECF No. 1-5]). Petitioner's OSUP contained several conditions upon which Petitioner was to be released including that he does not commit any crimes while released and does not associate himself with criminal activity. (*See* Order of Supervision).

On April 22, 2026, Petitioner was charged in Miami-Dade County, Florida with Burglary of an Occupied Structure in violation of Fla. Stat. § 810.02(3)(C), Possession of an Illegal Tank/Container in violation of Fla. Stat. § 316.80(1), Petit Theft in violation of Fla. Stat. § 812.014(2)(F), and (4) Criminal Mischief in violation of Fla. Stat. § 806.13(1)(B)2. (*See* Arrest Affidavit [ECF No. 1-6] 11). The case was nolle prossed. (*Id.* 18–19).

On May 29, 2026, Petitioner's OSUP was revoked and he was taken into U.S. Immigration and Customs Enforcement ("ICE") custody. (Detention History [ECF No. 4-6]). On this same date, ICE conducted an informal interview, during which a Deportation Officer explained to Petitioner that his OSUP was revoked to effectuate Petitioner's removal from the United States. (Declaration of Deportation Officer Deborah Lauciello ("Lauciello Decl.") [ECF No. 4-2] ¶¶ 19–20, 24). Petitioner was given an opportunity to ask questions, but he stated that he did not have any. (*Id.* ¶ 21). Petitioner was also issued a Form I-229(a), Warning for Failure to Depart on that same day. (Warning for Failure to Depart [ECF No. 4-8]).

On June 9, 2026, Petitioner was served with a Notice of Third Country Removal to Mexico, which he did not sign. (Notice of Removal [ECF No. 4-7]). That same day, Petitioner was formally served with a Notice of Revocation of Release, stating that his OSUP was revoked because ICE determined it was appropriate to enforce the removal order against him and ICE has the means to effectuate his removal. (Notice of Revocation of Release [ECF No. 4-9]).

## II.    LEGAL STANDARD

District courts are authorized to grant writs of habeas corpus. *See* 28 U.S.C. § 2241(a). "Habeas is at its core a remedy for unlawful executive detention." *Munaf v. Geren*, 553 U.S. 674, 693 (2008) (citation omitted). "The typical remedy for such detention is, of course, release." *Id.* (citation omitted). "Claims challenging the fact or duration of a sentence fall within the 'core' of habeas corpus, while claims challenging the conditions of confinement fall outside of habeas corpus law." *Vaz v. Skinner*, 634 F. App'x 778, 780 (11th Cir. 2015) (citing *Nelson v. Campbell*, 541 U.S. 637, 644 (2004)) (other citations omitted). Further, the Fifth Amendment's Due Process Clause forbids the Government to "depriv[e]" any "person . . . of . . . liberty . . . without due process of law." "Freedom from imprisonment — from government custody, detention, or other forms of physical restraint — lies at the heart of the liberty that [the] Clause protects." *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001).

## III.    DISCUSSION

The Petition alleges seven claims for relief. (*See generally* Pet.). First, Petitioner alleges that Respondents had no legitimate, non-punitive objective in revoking Petitioner's OSUP, and thus, Petitioner's detention violates substantive due process under the Fifth Amendment to the U.S. Constitution. (*Id.* ¶¶ 58–67). Second, Petitioner alleges that revoking his OSUP without providing notice and a meaningful opportunity to respond violated procedural due process under

3

the Fifth Amendment to the U.S. Constitution. (*Id.* ¶¶ 68–78). Next, Petitioner alleges that the revocation of his OSUP was unlawful and in violation of the Administrative Procedure Act ("APA") because it was contrary to the agency's constitutional power and not in accordance with the Immigration and Nationality Act ("INA") and its implementing regulations. (*Id.* ¶¶ 79–91). Petitioner further alleges that the revocation of his OSUP was arbitrary and capricious and should be held unlawful and set aside. (*Id.* ¶¶ 92–104). Additionally, Petitioner alleges that the revocation of his OSUP was based on *ultra vires* regulations and in excess of statutory authority and should be held unlawful and set aside. (*Id.* ¶¶ 105–11). Petitioner also alleges that there is no statute, constitutional provision, or other source of law that authorizes Respondents to detain Petitioner. (*Id.* ¶¶ 112–13). Finally, Petitioner alleges that Respondents' revocation of Petitioner's OSUP "should be set aside for violating agency procedures, rules, or instructions." (*Id.* ¶¶ 114–17).

### A. Respondents had a valid basis to revoke Petitioner's OSUP and did not violate Petitioner's right to substantive due process

Petitioner argues that his detention is unlawful because he never violated the terms of his supervision, and no change in circumstances warranted revocation of his OSUP. (*See* Pet. ¶¶ 64–67). Petitioner's argument is mistaken because 8 C.F.R. § 241.4(l)(2) provides bases for revocation other than violation of the conditions of release or changed circumstances. Specifically, § 241.4(l) permits revocation "in the exercise of discretion when, in the opinion of the revoking official" the purposes of release have been served, the alien violates any condition of release, it is appropriate to enforce a removal order or to commence removal proceedings against an alien, or the conduct of the alien, or any other circumstance, indicates that release would no longer be appropriate. § 241.4(l)(2).

Petitioner's Notice of Revocation indicates that ICE revoked Petitioner's OSUP "[p]ursuant to 8 C.F.R. § 241.4(l) . . . to enforce the removal order entered against you as ICE has

4

the ability and means to effectuate your removal." (Notice of Revocation of Release 1). Because an ICE Supervisory Deportation and Detention Officer indicated that revocation of Petitioner's release is in the public interest, circumstances do not reasonably permit referral of his case to the Executive Associate Director for revocation, and that revoking Petitioner's OSUP is necessary to enforce the removal order as ICE has the ability and means to effectuate Petitioner's removal, there was a statutory basis to revoke Petitioner's OSUP. (*See* Lauciello Decl. ¶¶ 25–26; Notice of Revocation 2; Delegation of Signature Authority Memorandum [ECF No. 4-10]). As there was a statutory basis to revoke Petitioner's OSUP, Petitioner's detention does not violate Petitioner's right to substantive due process and Counts One and Six fail.

### B. Respondents provided notice and an informal interview, and did not violate Petitioner's procedural due process rights

An alien must be "notified of the reasons for revocation" of an OSUP under § 241.4(l). 8 C.F.R. § 241.4(l)(1). "[A]fter his or her return to [ICE] custody" the alien must be "afforded an initial informal interview promptly . . . to afford the alien an opportunity to respond to the reasons for revocation stated in the notification." *Id.* "If the alien is not released from custody following the informal interview," ICE must then commence "[t]he normal review process . . . with notification to the alien of a records review and scheduling of an interview, which will ordinarily be expected to occur within approximately three months after release is revoked." *Id.* § 241.4(l)(3).

"The undisputed purpose of [the notice] requirement is to give the non-citizen an opportunity to respond to or otherwise contest the reasons for the revocation." *Zhang v. Genalo*, 814 F. Supp. 3d 307, 324 (E.D.N.Y. 2025). For example, in *Perez-Escobar v. Moniz*, a notice of revocation was found to be deficient where ICE "merely asserted that 'there is a significant likelihood of removal in the reasonably foreseeable future,' that 'the purpose of [Petitioner's] release has been served,' and that 'it is appropriate to enforce the removal order'" without

"identify[ing] any specific changed circumstances to support these assertions." 792 F. Supp. 3d 224, 226 (D. Mass. July 24, 2025).

Here, Petitioner was issued a written Notice of Revocation of Release which stated that Petitioner's OSUP was revoked because "[i]t is appropriate to enforce the removal order entered against you *as ICE has the ability and means to effectuate your removal.*" (Notice of Revocation 1 (emphasis added)). Moreover, Petitioner does not dispute that he received an informal interview the day his OSUP was revoked. (*See* Lauciello Decl. ¶ 20; *see generally* Pet.). During Petitioner's informal interview, he was given an opportunity to ask questions but stated that he did not have any. (Lauciello Decl. ¶ 21). As Petitioner was given notice of the revocation of his OSUP by both the Notice of Revocation of Release and the informal interview and an opportunity to respond in the informal interview, his right to procedural due process was not violated, and Count Two fails. As the revocation of Petitioner's OSUP did not violate agency regulations, Count Seven also fails.

### C. Petitioner's APA claims are barred

Petitioner lacks standing to bring an APA claim. An APA claim is only available for final agency action "for which there is no other adequate remedy in a court." 5 U.S.C. § 704. Thus, Petitioner's APA claims are independently barred by this limitation in 5 U.S.C. § 704 as habeas offers him the relief he requests — release. Where claims for relief, as here, "necessarily imply the invalidity of their confinement" those claims "must be brought in habeas." *Trump v. J.G.G.*, 604 U.S. 670, 672 (2025) (cleaned up) (internal quotation marks and citation omitted). Therefore, Counts Three, Four, and Five also fail.

CASE NO. 26-23987-CIV-MARTINEZ

## IV.    <u>CONCLUSION</u>

Accordingly, it is **ORDERED AND ADJUDGED** that Petitioner Yamir Novas Alvarez's Petition for Writ of Habeas Corpus [ECF No. 1], is **DENIED without prejudice**. The Clerk is directed to **CLOSE** this case. Any pending motions or requests for relief are **DENIED as moot.**

**DONE AND ORDERED** in Miami, Florida, this __1__ day of July 2026.

_____
JOSE E. MARTINEZ
UNITED STATES DISTRICT JUDGE

cc:    all counsel of record

7